IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| POPLAR BLUFF INDUSTRIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | Division: |
| HARTFORD FIRE INSURANCE COMPANY | ) | |
| **Serve:** Hartford Fire Insurance Company | ) | |
| c/o Director of Insurance | ) | |
| 301 W. High Street, Room 530 | ) | |
| Jefferson City, MO 65101 | ) | |
| and | ) | |
| | ) | |
| HARTFORD CASUALTY INSURANCE | ) | |
| COMPANY | ) | |
| **Serve:** Hartford Casualty Insurance Company | ) | |
| c/o Director of Insurance | ) | |
| 301 W. High Street, Room 530 | ) | |
| Jefferson City, MO 65101 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Poplar Bluff Industries, Inc. ("PBI") and for its *Complaint* states:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, PBI is a Missouri not-for-profit economic development organization, in good standing with its principal place of business in Poplar Bluff, Missouri.

2.      Defendant Harford Fire Insurance Co. is a foreign corporation organized and incorporated in the state of Connecticut with its principal place of business in Connecticut.  The Missouri Department of Insurance has authorized Hartford Fire Insurance Co. to do business in Missouri.  Harford Fire Insurance Co. can be served via the Missouri Department of Insurance c/o Director of Insurance, 301 W. High Street, Room 530, Jefferson City, MO 65101.

3.      Defendant Harford Casualty Insurance Co. is a foreign corporation organized and incorporated in the state of Connecticut with its principal place of business in Connecticut.  The Missouri Department of Insurance has authorized Hartford Casualty Insurance Co. to do business in Missouri.  Harford Casualty Insurance Co. can be served via the Missouri Department of Insurance c/o Director of Insurance, 301 W. High Street, Room 530, Jefferson City, MO 65101.  Collectively, the defendants are referred to herein as "Hartford."

4.      This Court has jurisdiction over this matter because plaintiff and defendants are residents of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.  28 U.S.C. § 1332.

5.      This Court has jurisdiction over Hartford because Hartford issued this insurance policy to a resident of Poplar Bluff, Missouri to cover real property located in Poplar Bluff, Missouri.  Hartford is licensed to do business in Missouri and has regular contacts with Missouri.

6.      Venue is proper in the Southeastern Division of this Court because the insured is a resident of Poplar Bluff, Missouri, the insured property is in Poplar Bluff, Missouri, the damage occurred in Poplar Bluff, Missouri, and Hartford issued the insurance policy in Poplar Bluff, Missouri. 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL COUNTS

7.      Hartford issued Policy Number 84UUNPY39243 (the "Policy") to PBI, insuring the property located at 1747 Cravens Road, Poplar Bluff, MO 63901 (the "Property") against, *inter alia*, loss due to windstorms, snowstorms, rainstorms, weight of snow, ice, sleet, and/or water damage.

8.      The Policy's limit of insurance on the Property, excluding additional coverages, is $27,000,000.

9.      The Policy was in effect from November 22, 2014 to November 22, 2015.

10.     During the term of the Policy, PBI owned the Property and leased it to Nortek Global HVAC, LLC, then known as Nordyne, LLC ("Nortek").

11.     Prior to February 2015, the Property did not experience significant roof leaks.

12.     In February and March 2015 there were several windstorms, rainstorms, and snowstorms at and around the Property.

13.     The windstorms, rainstorms, and snowstorms in February and March 2015 led to water damage and a heavy weight of snow, ice, and sleet that caused a direct physical loss and direct physical damage to the Property (hereinafter "Cause of Loss").

     a.      The wind, rain, snow, and weight of the snow, ice, and sleet damaged the roof, which allowed water to enter and further damage the Property's interior.

     b.      Water entering the Property through the openings created in the roof by the Cause of Loss saturated the "sag and bag" insulation pinned between the purlins and the metal roof.

     c.      After saturating the insulation, water rained into the Property, causing direct physical damage to ceilings, walls, floors, and the vast amounts of Nortek inventory stored inside.

14.     On or about March 17, 2015, PBI timely notified Hartford of the damage to the Property and sought coverage under the Policy.

15.     Hartford assigned Claim No. CP16139243 to PBI's claim under the Policy for damage to the Property (the "Claim").

16.     On or about March 26, 2015, Nelson Forensics inspected the Property on behalf of Hartford.

17.     In a letter dated April 4, 2015, Hartford partially allowed Poplar Bluff's claim insofar as Hartford admitted that the Policy covered the interior water damage.

a.      Hartford subsequently paid $92,437.83 for a contractor to tack the wet insulation back up to the underside of the roof.

b.      Upon information and belief, Hartford specifically directed the contractor on what work to perform and what work not to perform, rather than allowing the contractor to determine what repairs were necessary.

c.      Hartford did not pay to have the insulation removed.

d.      Hartford did not pay to have the insulation replaced.

e.      Hartford did not pay to have the insulation dried.

f.      Hartford did not pay to have the insulation refurbished.

g.      Hartford did not pay for all of the other interior water damage.

18.     Since the repairs performed at the direction of Hartford, the Property has continued to experience significant roof leaks that it had not experienced prior to the storms in February and March 2015.

19.     In its letter dated April 4, 2015, Hartford denied the remainder of the Claim, including the cost of repairing or replacing the roof.

20.     Hartford's April 4, 2015 letter specified that the only grounds for partially denying the Claim was its conclusion that there was no physical damage to the roof caused by a covered peril and the moisture intrusion was through openings that pre-existed as a result of long-term deterioration or poor installation of the roof, not the snow/rain/wind event.

21.     On or about May 19, 2016, Hartford sent an e-mail to PBI inviting PBI to submit additional materials for Hartford to consider changing its coverage decision.

22.     In reliance on Hartford specifying a single reason for partially denying the Claim and Hartford's invitation to submit additional materials, PBI engaged consultants, engineers, and contractors to establish that the roof was damaged by the Cause of Loss rather than deterioration or poor installation.

23.     On or about August 2, 2016, PBI sent Hartford a report prepared by Williams Contractors & Building Consultants, LLC ("WCBC") concluding that:

        a.     The weight of snow, ice, and sleet caused the roof damage;

        b.     The insulation needed to be replaced; and

        c.     There was other water damage to the Property's interior.

24.     Hartford responded to the WCBC report by engaging professional engineers from SEA, Ltd. ("SEA") to justify Hartford's lone basis for partially denying the claim—that deterioration or poor installation caused the roof openings.

25.     On or about October 25, 2016, Hartford and SEA were invited to and attended a second Property inspection with PBI, Nortek, WCBC, and Adam Sheafbauer but the representatives from Hartford and SEA refused to confer with the representative from PBI and WCBC during that inspection.

26.     On or about November 11, 2016, Hartford sent PBI a letter affirming Hartford's partial denial of the claim based solely on Hartford's conclusion that water entered the Property through pre-existing roof openings created by deterioration or poor installation.

27.     On or about March 28, 2017, PBI sent an e-mail to Hartford stating that the Claim was a long way from being resolved.

28.     On or about March 28, 2017, Hartford sent an e-mail to PBI stating that Hartford's position was unchanged but not citing any new grounds for partially denying the Claim.

29.     On or about March 29, 2017, Hartford sent an e-mail to PBI stating that Hartford's home-office counsel had reviewed the Claim but not citing any new grounds for partially denying it.

30.     In May, 2017, in reliance on Hartford specifying a single reason for partially denying the Claim during the two years in which Hartford and PBI had been discussing it, PBI engaged engineers at SRI Consultants, Inc. ("SRI") to conduct a two-day inspection of the Property and prepare a report.

31.     SRI reported that this loss was resultant from abnormal snow, rain, and ice and not deterioration or poor installation of the roof.

32.     SRI also reported that the insulation repairs previously authorized by Hartford were deficient.

33.     On or about October 24, 2017, PBI sent SRI's report to Hartford along with a demand that Hartford change its coverage decision.

34.     On or about December 12, 2017, Hartford sent a letter to PBI stating that it would not change its coverage decision; Hartford did not state any new or additional basis for partially denying the Claim.

35.     On May 24, 2018, in response to an e-mail, Hartford sent a letter to WCBC stating that Hartford upheld its prior coverage decision; Hartford did not state any new or additional basis for partially denying the Claim.

36.    Hartford's conduct of continuing to investigate the Claim for years and repeatedly issuing written partial denials stating the same single basis clearly and unequivocally shows a purpose by Hartford to relinquish any other grounds for partially denying the Claim.

37.    As a small-town not-for-profit economic development organization, PBI lacked the funds necessary to repair the damage done to the Property, which is a large industrial building.

38.    After Hartford refused to provide the insurance coverage for which PBI had consistently paid over the years, PBI spent more than $65,000 of its own money, which is as much as it could afford, to patch critical sections of the Property's roof.

39.    The roof repairs for which PBI paid are both temporary and insufficient; the Property continues to experience significant roof leaks.

## COUNT I
### (Breach of Contract)

40.    PBI incorporates its other allegations by reference as though stated herein.

41.    The Policy is a valid and binding contract between Hartford and PBI.

42.    PBI has complied with the terms of the Policy.

43.    The Policy provides coverage for direct physical loss of or damage to the Property caused by, *inter alia*, windstorms, snowstorms, rainstorms, weight of snow, ice, sleet, and/or water damage.

44.    The Property suffered direct physical loss and damage caused by windstorms, snowstorms, rainstorms, weight of snow, ice, sleet, and/or water damage.

45.    Hartford breached the Policy by refusing to provide coverage for the roof of the Property damaged by windstorms, snowstorms, rainstorms, weight of snow, ice, sleet, and/or water damage.

46.     Hartford breached the Policy by refusing to adequately repair or replace the interior portions of the Property that suffered water damage, which Hartford admits the Policy covers, including: insulation, ceilings, walls, and floors.

47.     The Policy provides coverage for PBI's claim expenses.

48.     PBI incurred significant claim expenses.

49.     PBI sought coverage for its claim expenses.

50.     Hartford denied PBI coverage for claim expenses.

51.     Hartford breached the Policy by denying PBI coverage for claim expenses.

52.     The Policy provides $1,000,000 in ordinance or law (demolition and increased cost of construction) coverage and up to $27,000,000 in ordinance or law (value of the undamaged building) and ordinance or law (increased period of restoration) coverage.

53.     PBI's cost to repair the Property from the damage due to the Cause of Loss is increased due to PBI's need to comply with current ordinances and laws.

54.     PBI sought coverage from Hartford for the cost of complying with current ordinances and laws.

55.     Hartford denied coverage for PBI's cost of complying with current ordinances and laws.

56.     Hartford breached the Policy by denying PBI coverage for the cost of complying with current ordinances and law.

57.     The Policy provides $50,000 in lessor's tenant move-back expense coverage.

58.     PBI had tenant move-back expenses due to the Cause of Loss insofar as Nortek had to remove, repackage, and return its inventory that had been saturated with water.

59.     PBI sought coverage from Hartford for its tenant move-back expenses.

60.     Hartford denied coverage for PBI's tenant move-back expenses.

61.     Hartford breached the Policy by denying coverage for PBI's tenant move-back expenses.

62.     The Policy covers damage to property of others on the Property.

63.     The Cause of Loss damaged large amounts of property belonging to Nortek stored on the Property.

64.     PBI sought coverage from Hartford for the damage done to property belonging to others.

65.     Hartford denied coverage to PBI for the property belonging to others.

66.     Hartford breached the Policy by denying coverage for property belonging to others.

67.     The Policy covers damage to tenant improvements and betterments.

68.     The Cause of Loss damaged improvements and betterments made to the Property by Nortek.

69.     PBI sought coverage from Hartford for tenant improvements and betterments.

70.     Hartford denied coverage for tenant improvements and betterments.

71.     Hartford breached the Policy by denying coverage for tenant improvements and betterments.

72.     The Policy covers architect and engineering fees.

73.     PBI incurred engineering fees as a result of the Cause of Loss.

74.     PBI sought coverage from Hartford for PBI's engineering fees.

75.     Hartford denied coverage for PBI's engineering fees.

76.     Hartford breached the Policy by denying coverage for PBI's engineering fees.

77.     PBI has been damaged well in excess of $75,000 by Hartford's breaches of the Policy in that it has not received all of the insurance coverage and benefits for which it contracted and paid.

## COUNT II
### (Vexatious Refusal to Pay in Violation of Mo. Rev. Stat. § 375.420)

78.     PBI incorporates its other allegations by reference as though stated herein.

79.     Hartford is an insurance company.

80.     The Policy insures PBI and the Property against loss due to, *inter alia*, fire, cyclone, lightning, accident, employer's liability, burglary, theft, embezzlement, fidelity, and indemnity.

81.     The Policy is not automobile liability insurance.

82.     This action is against Hartford to recover the unpaid amount of the loss under the Policy as a result of the Cause of Loss.

83.     Hartford has refused to fully pay for PBI's loss without reasonable cause or excuse.

        a.     Hartford displayed a vexatious and recalcitrant attitude when it refused to consult with PBI or WCBC during the second Property inspection.

        b.     Hartford ignored evidence contrary to its decision to partially deny the Claim when it refused to address the reports from WCBC and SRI that specifically refuted previous reports from Nelson Forensics and SEA.

84.     Hartford has not yet fully paid for PBI's covered loss despite the fact that the Cause of Loss occurred more than three and a half years ago.

85.     Hartford has, without reasonable cause or excuse, refused to pay the additional coverages to which PBI is entitled, including claim expenses, ordinance or law, tenant move-back, property belonging to others, tenant improvements, and engineering fees.

86.     Hartford has refused to negotiate the value of PBI's claim in good faith, or at all.

WHEREFORE, plaintiff Poplar Bluff Industries, Inc. prays that this Court enter judgment in its favor and against defendants on all counts by; award plaintiff compensatory damages in an amount to be proven at trial and in excess of $75,000; award PBI statutory damages; award PBI prejudgment interest; award PBI post-judgment interest; award PBI its costs and attorneys' fees; and order such other and further relief as is just and proper.

Respectfully submitted,

**LEVY CRAIG LAW FIRM**
A PROFESSIONAL CORPORATION

By _____/s/ Shane C. Mecham_____
Shane C. Mecham        MO # 56871
4520 Main Street, Suite 1600
Kansas City, Missouri  64111
(816) 474-8181
Fax: (816) 382-6606
smecham@levycraig.com

*Attorney for Plaintiff, Poplar Bluff Industries, Inc.*