UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| POPLAR BLUFF INDUSTRIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.  1:18 CV 213 ACL |
| vs. | ) |
| | ) |
| HARTFORD FIRE INS. CO., and | ) |
| HARTFORD CASUALTY INS. CO., | ) |
| | ) |
| Defendants. | ) |

# ORDER

This case involves a dispute over insurance coverage for property that was owned by Poplar Bluff Industries, Inc. (PBI) and damaged following winter storms in early 2015.  The insurance policy was issued by Hartford Casualty Insurance Company and written by Hartford Fire Insurance Company (hereinafter referred to as Hartford).  Before the Court are Defendants' Motion to Quash Subpoenas and/or for Protective Order, Plaintiff's Motion to Compel Discovery Responses, and Defendants' Motion for Leave to File Second Amended Answer.  The motions have been briefed and are ripe for disposition.  For the following reasons, the Court will grant Hartford's Motion to Quash and Motion for Leave to File Second Amended Answer; and hold in abeyance PBI's Motion to Compel.

## Background

Hartford issued an insurance policy to PBI covering property located at 1747 Cravens Road, Poplar Bluff, Missouri for loss due to windstorms, snowstorms, rainstorms, weight of snow, ice, sleet, and/or water damage.  On March 17, 2015, PBI reported that it suffered a direct physical loss and direct physical damage to the property insured under the policy.

Specifically, PBI claimed that wind, rain, and snow events caused 1) damage to the roof which allowed water to pour in the building, further causing 2) damage to the insulation within the metal roof, and 3) damage to the ceilings, walls, floors, and inventory belonging to PBI's lessee, Nortek Global HVAC, LLC, then known as Nordyne, LLC (Nortek).

Less than two weeks later, on March 26, 2015, Nelson Forensics (Nelson) inspected the Property on behalf of Hartford.  In a letter dated April 4, 2015, Hartford explained that Nelson determined "the moisture distress at the interior of the structure is the result of moisture intrusion through openings which p[re]-existed the reported snow/rain events and were caused by long-term aging and deterioration of the roof covering."  (Doc. 33-3 at 1.) Hartford further noted that Nelson opined "that the reported snow/rain event did not result in damage to the metal roof panels that would have allowed moisture to penetrate the roof covering."  *Id*. Consequently, Hartford concluded that the physical damage to the roof was not caused by a covered peril.  With regard to the interior water damage, Hartford concluded that damage was repairable and covered under the policy.

More than one year after Hartford reported its findings regarding the roof damage to the Property, PBI hired a consultant, Stan Williams, to examine the condition of the roof.  A copy of that report was sent to Hartford on August 2, 2016.   Sometime after receiving Williams' report, Hartford "engaged S-E-A forensics to inspect the roof."  *Id*. at 4.  In a letter dated November 11, 2016, Hartford listed S-E-A's conclusions in four bullet points, as follows:

   a) No evidence of structural damage to the steel roof deck that could be attributed to the reported snow loading on the roof was observed.

> b) Weather data indicated that the maximum weight of snow on the subject roof from the reported storms was within the Building Code required design snow and roof live loading for the area.
>
> c) The observed damage to the roof deck was caused by thermal movement of the roof panels, possibly coupled with inadequate installation, not snow loading.
>
> d) The ongoing nature of the leaks in the roof indicated that the probable cause of the roof leaks was inadequate installation of the metal roof panels and/or long term deterioration of the seals in the roof panel joints.

*Id*. at 5. Hartford concluded that "both experts" (Nelson and S-E-A) "are licensed engineers and agree that the reported snow/rain event did not result in the damage to the metal roof panels that would have allowed moisture to penetrate the roof covering." *Id*. Hartford reiterated that the companies' position "that there is no direct physical damage to the roof from a Covered Cause of Loss" remained unchanged from that stated in the May 4, 2015 letter.

By March of 2017, Williams contacted Hartford by email and explained that PBI was "looking into retaining the services of a structural engineer, Rene Dupis with Structural Research, Inc. (SRI) to determine the proper remedy for making repairs and determining the causation of the damage as it relates to preparing a proper scope of work." *Id*. at 10. On March 23, 2017, Hartford responded that engineers had been engaged "as part of [their] claim investigation" and "[b]ased on the engineering reports, [ ] determined there was no direct physical loss or physical damage to the roof from a Covered Cause of Loss." *Id*. at 11. As such, Hartford noted that the Policy would "not provide any coverage for any architect/engineer fees you choose to incur." *Id*.   Williams submitted a report from SRI on

October 24, 2017.  In a December 19, 2017 letter to PBI, Hartford reiterated its position "that there is no direct physical damage to the roof from a Covered Cause of Loss."  *Id*. at 13.

Through current counsel, PBI sent a demand letter to Hartford dated August 15, 2018.  Hartford rejected the demand to settle the claim and explained that "Hartford denied coverage for the roof because there was no physical damage to the roof by a Covered Cause of Loss."  *Id*. at 16.  Hartford added, however, that it "provided coverage under the policy for the interior water damages to the building."  *Id*.  On May 4, 2018, a payment was made to "repair the interior water damages and the damaged insulation in the amount of $92,437.83" and a proof of loss in the amount of $92,437.83 was executed by PBI on May 27, 2015.  *Id*.

PBI filed the present case with this Court on August 27, 2018.  On October 15, 2018, PBI notified Hartford pursuant to Fed.R.Civ.P. 45(a)(4) that it intended to issue Subpoenas to Produce Documents to three consulting experts engaged by Hartford—Nelson, S-E-A, and The Tines Group (Tines).  PBI served the Nelson subpoena on October 23, 2018, the S-E-A subpoena on October 24, 2018, and the Tines subpoena on October 30, 2018.  PBI avers that according to the instructions in the subpoenas, Nelson's response was due on November 26, 2018, while the S-E-A and Tines responses were due on November 23, 2018 and December 3, 2018, respectively.  Nelson responded to its subpoena on October 31, 2018.  PBI did not notify Hartford of the dates the subpoenas were served on Nelson, S-E-A, and Tines.  Hartford filed a Motion to Quash on December 5, 2018.

**Legal Standards**

"Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents…."  Fed. R. Civ. P. 26(b)(1).  Rule 26 further

places certain requirements on a party claiming certain information is not subject to discovery:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).  A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause.  Fed. R. Civ. P. 26(c)(1).  "The District Court does have discretion to limit the scope of discovery."  *Credit Lyonnais v. SGC Int'l. Inc.*, 160 F.3d 428, 431 (8th Cir. 1998) (citation omitted).

Additionally, Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  "The burden is …. upon the movant to show the necessity of its issuance, which contemplates 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements * * *.'"  *Gen. Dynamics Corp. v. Self Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (citation omitted).  "Such determination must also include a consideration of the relative hardship to the non-moving party should the protective order be granted."  *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 4-5 (1970)).

Rule 45 is the mechanism that enables parties to compel witnesses that reside, work, or regularly transact business in person within 100 miles of the courthouse--to attend a trial, deposition, or hearing; and to produce documents, electronically stored information, or tangible things specified in a properly issued subpoena.  *See* Fed. R. Civ. P. 45(c).  When a Rule 45 subpoena is served on a non-party, the issuing party is required to serve notice to

other parties "before it is served on the person to whom it is directed."  *See* Fed. R. Civ. P. 45(a)(4).  The person commanded to produce documents "may serve on the party or attorney designated in the subpoena a written objection to the production or inspection requested "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  *See* Fed. R. Civ. P. 45(d)(2)(B).  Upon the timely filing of a motion to quash or modify, quashing or modification of a subpoena issued under Rule 45 is *required* where certain specified circumstances present themselves such as a request that requires disclosure of privileged or other protected matter and no exception applies.  *See* Fed. R. Civ. P. 45(d)(3)(A).

Courts are also *permitted* to quash or modify a Rule 45 subpoena to protect a person affected by the subpoena if the subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by the party."  *See* Fed. R. Civ. P. 45(d)(3)(B)(ii).

Rule 26 identifies two means of obtaining expert discovery:  1) mandatory disclosure of expert reports and opinions under Rule 26(a)(2) for which the deadline in the instant Case Management Order is June 14, 2019; and 2) scheduled depositions of experts for which the opposing party may be present pursuant to Rule 26(b)(4).  Communications between a party's attorney with their experts are protected under the work product doctrine unless the communications:

> (i)  relate to compensation for the expert's study or testimony;
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C).

## Discussion

Motion to Quash Subpoena *Duces Tecum*

Hartford now moves to quash the subpoenas for Nelson, S-E-A, and Tines, or in the alternative seeks a protective order.  Hartford argues that the subpoenas: 1) "failed to include a time and place for the production of designated documents"; 2) "erroneously seek privileged, irrelevant, and other protected matter from [Hartford]'s consulting experts"; 3) are "an improper means of accomplishing discovery concerning [Hartford]'s experts, especially when [Hartford] ha[s] not yet disclosed their expert witnesses"; and 4) are "overly broad and otherwise objectionable." (Doc. 30 at 1-2.)  Most significantly, Hartford complains that PBI is improperly attempting to obtain discovery from their experts via Rule 45.  Hartford further alleges that PBI's use of Rule 45 subpoenas has already resulted in the production of potentially privileged information" by Nelson.  Hartford argues that the challenged subpoenas require disclosure of privileged or other protected matter, and that Rule 26(b)(4) is the proper avenue in which to obtain discovery of the "experts hired to investigate and assess [PBI]'s roof claim." (Doc. 40 at 4.)  At the present time, Hartford characterizes those individuals as non-testifying experts.  *Id*.

In response, PBI claims that:  A) Hartford failed to make a good-faith effort to resolve the dispute before filing the Motion to Quash, B) the Motion is untimely; and C) Rule 45 requires that the subpoena recipient—rather than Hartford—object to the subpoena.  PBI also contends that because the Complaint alleges a vexatious refusal to pay claim, Hartford's decision to deny coverage is a central issue and the communications with Nelson, S-E-A, and Tines that resulted in the denial cannot be privileged.  PBI further argues that Nelson, S-E-A,

and Tines were not hired as experts in anticipation of litigation rather the companies acted as "investigators to adjust an insurance claim." PBI avers that when Hartford shared the reports of the three experts with PBI it "waived any privilege that might be associated with their documents regarding this claim." (Doc. 33 at 4.) Alternatively, PBI claims that "exceptional circumstances warrant" disclosure of the requested documents and communications as it "is the only means by which PBI can learn the source material that Hartford alleges justified denying the Claim." *Id*. PBI suggests that if requested items are perceived as protected documents, the subpoena recipient "submit a privilege log so that PBI and the Court can assess the claimed privilege." *Id*. at 5. With regard to the documents already produced by Nelson, "PBI is open to discussing an appropriate protective order limiting the disclosure of produced documents in an effort to address Hartford's concerns." *Id*. at 6.

    First, the Court finds that Hartford has standing to challenge the subpoenas at issue "In general, '[a] motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena.'" *Mayhall v. Berman & Rabin, P.A.*, 2013 WL 4496279, at *3 (E.D. Mo. Aug. 21, 2013) (quoted case omitted).

    The subpoenas at issue request "all communications" between the recipient and Hartford or anyone else or relating to PBI, the subject property, or the subject claim; and "all documents" relating to or referring to PBI, the subject property, or subject claim; and documents reflecting amounts charged to Hartford or any related entity from 2014 through 2018. (Docs. 31-1, 31-2, 31-3.) Hartford's claim that the subpoenas require disclosure of privileged matter is sufficient to establish standing to challenge the subpoenas. *See, e.g.*

*Westchester Surplus Lines Ins. Co. v. Interstate Underground Warehouse & Storage, Inc.*, No. 16-00136-CV-W-HFS, 2017 WL 2313288, at *2 (W.D. Mo. May 18, 2017) (granting defendant's motion to quash Rule 45 subpoena issued to defendant's expert when defendant argued subpoena required disclosure of privileged or protected matter).

The crux of the parties' dispute is whether a party can use a Rule 45 Subpoena *Duces Tecum* to circumvent the more restrictive discovery provisions of Rule 26(a)(2) and Rule 26(b)(4) governing discovery of information from experts, whether testifying or not.  Both parties have engaged the services of multiple experts and neither party is obligated to identify which of those experts will be testifying at trial at this time.  A number of courts have concluded that "a party may not use a nonparty subpoena to bypass [the] expert discovery parameters of Rule 26." *Lead GHR Enterprises, Inc. v. American States Ins. Co.*, No. 3:17-mc-91-M-BN, 2017 WL 6381744, at *10 (N.D. Tex. Dec. 14, 2017), citing *In re Fuller*, No. 2:13-MC-140-JHR, 2013 WL 5305317, at *2 (D. Me. Sept. 18, 2013); *see also Westchester Surplus Lines Ins. Co.*, 2017 WL 231328 at *2; *Perry v. United States*, No. 3:96-CV-2038-T, 1997 WL 53136, at *1 (N.D. Tex. Feb. 4, 1997) ("[R]ule 26(b)(4) governs a party's access to the opposing party's experts.  A party may not circumvent the limitations of Rule 26 and gain access to opposing expert evidence via a bare subpoena duces tecum."); *Moriss v. BNSF Ry. Co.*, 2014 WL 128393 (D. Neb. Jan. 13, 2014) (Rule 45 does not apply to expert retained by a party; the provisions of Rule 26(b)(4) govern such discovery.).

 The reasoning of *Marsh v. Jackson*, was often repeated in a number of the aforementioned decisions:

> None of the methods of discovery allowed under Rules 26(b)(4) and 30 permit the use of bare Rule 45 subpoenas *duces tecum*.  Instead, they operate as a control,

> or brake if you will, on the potential runaway use of the subpoena *duces tecum* to compel the production of the evidence of experts retained by a party to testify at trial.  These methods are tried and true.  They both are simple and provide protecttion for the parties and witnesses.  They contemplate gathering information first from the party *viz* Rule 26(b).  In the event a party wishes to deal directly with the opponent's expert, Rule 30 permits the use of a deposition.  In conjunction with that deposition, the expert might be served also with a Rule 45 subpoena *duces tecum* requiring him to produce a designated list of materials or things.  The most important attribute of these discovery methods is that they protect the interests of the expert and the party retaining him in the work that he has produced, while also providing access to the opposing party, though such access might not be as inexpensive as the opponent might desire.

141 F.R.D. 431, 433 (W.D. Va. 1992).

Consistent with this established precedent, the undersigned finds that the Rule 45 Subpoenas issued to Hartford's consulting experts are an improper means of accomplishing expert discovery.  PBI may be entitled to some of the documents identified in the subpoenas, and the Court recognizes that "potentially some time might be saved by permitting discovery of experts under Rule 45."  *Westchester Surplus Lines Ins. Co.*, 2017 WL 2313288 at * 2.  The requests for this information at this time, however, are premature.  Further, the Court shares Hartford's concerns regarding the scope of the subpoenas requiring the disclosure of information that is privileged or protected work product.  PBI must follow the dictates of Rule 26, and delay their requests for expert discovery in accordance therewith.  Consequently, the Motion to Quash will be granted.

The Court's conclusion would have prevented Nelson from producing information that has already been provided to PBI.  Consequently, pursuant to Rule 45(e)(2)(B), PBI must "promptly return, sequester, or destroy the specified information and copies it has."

Motion to Compel Production

While some preliminary efforts were made by PBI and Hartford to resolve the problems related to the Interrogatories and Requests for Production served on Hartford, the parties never engaged in a meaningful discussion thereby relieving this Court of any obligation to resolve the Motion to Compel.  PBI attempted phone communications on three occasions and Hartford ultimately quit responding, requiring the filing of the Motion to Compel.

The Court is obligated to administer the discovery rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  These objectives require that discovery be limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).  The Advisory Committee Notes to Rule 1 emphasize that lawyers share the responsibility to employ the rules in a just, speedy, and inexpensive manner; and discourages attorneys from "over-use, misuse, and abuse of procedural tools that increase cost and result in delay."  Adding further that, "[e]ffective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure."  Fed. R. Civ. P. 1 Advisory Committee Note to 2015 Amendment.  Counsel are encouraged to be mindful of this guidance as the case progresses.

The parties are directed to meet and confer and make reasonable efforts to resolve their current disputes regarding the Interrogatories and Requests for Production served on Hartford.  A status conference will be held by telephone on March 8, 2019 at 11:00 a.m., during which the parties will inform the Court of the results of their efforts.  Each party will

be required to submit a memorandum to the Court summarizing the status of the disputes not later than Tuesday, March 5, 2019.

Leave to Amend

Also pending is Hartford's Motion for Leave to File Second Amended Answer.  (Doc. 43.)  Hartford seeks to add one affirmative defense alleging that PBI's sale of the subject property to a third party may affect PBI's:  standing to bring this action, the coverage under the subject policy, and the amount of coverage or other damages to which PBI may be entitled.

PBI opposes the Motion, arguing that the amendment would be futile because the proposed affirmative defense lacks merit.  (Doc. 45.)  PBI further argues that it would be prejudiced by the addition of the affirmative defense due to the additional investigation that would be required by PBI.

The Case Management Order allows motions for amendments of pleadings to be filed on or before March 1, 2019.  (Doc. 24.)  Because Hartford's Motion was filed well within the time allowed by the Court's Case Management Order, the Motion will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Quash Subpoenas and/or for Protective Order (Doc. 30) is **granted** as set out in this Memorandum and Order.

**IT IS FURTHER ORDERED** that PBI must "promptly return, sequester, or destroy" the response provided by Nelson Forensics as set out in this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Discovery Responses (Doc. 35) is **held in abeyance**.

**IT IS FURTHER ORDERED** that a status conference will be held by telephone on **Friday, March 8, 2019 at 11:00 a.m.**  Chambers will initiate the call.  **Not later than Tuesday, March 5, 2019, each party must provide the Court with a summary, not longer than two-pages, describing the status of the disputes.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Second Amended Answer (Doc. 43) is **granted**.

Dated this 19th day of February, 2019.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE